F. Christopher Austin (SBN 6559)
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, Nevada 89144
Telephone: (702) 382-4804
Email: caustin@weidemiller.com

Jeremy P. Oczek (Pro hac vice)
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7000
Email: jpoczek@bsk.com

Jonathan L. Gray (Pro hac vice)
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8500
Email: jlgray@bsk.com

*Counsel for Plaintiffs*
*Signify North America Corporation*
*and Signify Holding B.V.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.,<br><br>Plaintiffs,<br>vs.<br><br>LEPRO INNOVATION INC, LE INNOVATION INC, INNOVATION RULES INC., HOME EVER INC., and LETIANLIGHTING, INC.,<br><br>Defendants. | Case No.: 2:22-cv-02095-JAD-EJY<br><br>**PLAINTIFFS' MOTION TO COMPEL A FULL AND FAIR EXAMINATION OF DEFENDANTS' SOLE TECHNICAL EXPERT WITNESS** |

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-1-

Pursuant to Federal Rule of Civil Procedure 30(d)(1), Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") respectfully move the Court for an order compelling a full and fair examination of Defendants' designated expert witness, John W. Curran, Ph.D. Dr. Curran is the sole technical expert witness for all five Defendants and is being proffered to opine on issues of alleged invalidity and non-infringement *on all 63 asserted patent claims of all six Patents-in-Suit*. Signify respectfully submits that a full and fair examination of Dr. Curran will take four days total (three additional days beyond the one day provided by the Federal Rules). Plaintiff has produced five technical expert witnesses on the same 63 claims, giving Defendants a total of five days of examination on those topics. The five Defendants have collectively only produced Dr. Curran and have refused to permit his deposition to exceed seven hours on the same 63 claims in the six Patents-in-Suit and for each of the five Defendants' accused products. Absent the requested relief, Signify will be unfairly prejudiced, as Signify will be unable to fully examine Dr. Curran on each of the claims on which he is to testify.

## I. CERTIFCATION OF MEET AND CONFER

Pursuant to and in accord with LR II 26-6(c), Signify, through its counsel, held telephonic "meet and confers" with Defendants' counsel on Wednesday, August 7, 2024, and Thursday, August 8, 2024, in addition to engaging in email correspondence on the matter.[1] A copy of this correspondence is attached hereto as **Exhibit 2**.[2] In those meetings, Signify requested Defendants agree to produce Dr. Curran for three additional days of deposition so Signify could fairly question him on the full scope of his invalidity and non-infringement opinions on all six patents and all 63 asserted claims. Despite good faith efforts to avoid the necessity of petitioning the Court, Defendants were unwilling to agree to provide Signify with the requested additional deposition time, necessitating this Motion.

/ / /

/ / /

---

[1] *See* Declaration of Jeremy P. Oczek ("Oczek Decl."), ¶¶ 1-5, attached hereto as **Exhibit 1.**

[2] *Id*. at ¶¶ 2-7, authenticating all documents attached to this Motion, including the Email correspondence between Plaintiffs' counsel Mr. Oczek and Defendants' counsel Mr. Brown, August 7-8, 2024, attached as **Exhibit 2**.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-2-

## II. FACTUAL BACKGROUND

"This is a patent-infringement suit over LED lighting products."[3] Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") allege that Defendants Lepro Innovation Inc., LE Innovation Inc., Innovation Rules Inc., Home Ever Inc., and Letianlighting Inc. (collectively, "Lepro") infringed six of Signify's United States patents covering various LED technologies:

| Patent No. | Title | Asserted Claims |
|---|---|---|
| 7,014,336 | Systems and Methods for Generating and Modulating Illumination Conditions | 132–135, 137–139, 141–142, 144–145, 147, 153, 157–158, 160–163, 186, 187, 189 |
| 7,038,399 | Methods and Apparatus for Providing Power to Lighting Devices | 7–8, 17–19, 58–60 |
| 7,352,138 | Methods and Apparatus for Providing Power to Lighting Devices | 1–2, 9–11, 20–22 |
| 7,348,604 | Light-Emitting Module | 1–5, 8–10, 12 |
| 8,063,577 | Method and a Driver Circuit for LED Operation | 1–4, 6–7 |
| RE49,320 | Lighting Device with Built-In RF Antenna | 1, 6, 11–12, 15, 18–19, 21–22, 25 |

The six Patents-in-Suit cover a range of scientific disciplines related to LED lighting ranging from color-mixing, to power electronics, to RF communication, to thermal management and mechanical construction. The six Patents-in-Suit are briefly summarized below, as excerpted verbatim from the Court's Claim Construction Order (ECF No. 91) with internal citations removed for brevity:

**U.S. Patent No. 7,014,336 (Exhibit 3 hereto)**

The '336 patent is titled "Systems and Methods for Generating and Modulating Illumination Conditions," and one aspect of the invention is directed towards using LEDs to generate "high-quality white light." According to the patent, this can be accomplished "by mixing the electromagnetic radiation from a plurality of component illumination sources such as LEDs"

---

[3] Claim Construction Order, ECF No. 91 at 1.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-3-

and, more specifically, "by choosing LEDs that provide a white light that is targeted to the human eye's interpretation of light" or "photopic response." The patent explains that "traditional mixing methods" used to create white light "still produce an abnormal appearance to the human eye." This "artificial" appearance is due in part to "dramatic peaks" or "spikes" in the electromagnetic (light) spectrum. Indeed, "part of the reason that fluorescent light looks very artificial" is because of such peaks.

The patent goes on to note that "most artificial light" has "some peaks and valleys" that fall "within the area of the human eye's photopic response." But to create "high-quality white light" (according to at least one embodiment) it is "desirable to close the gap between the lowest valley and the maximum peak," and "the less difference between those two points the better." Moreover, "[t]he lowest valley in the visible range should have a greater intensity than the intensity attributable to background noise as would be understood by one of skill in the art.

**U.S. Patent Nos. 7,038,399 and 7,352,138 (Exhibits 4 and 5 hereto)**

The '138 patent is a continuation of the '399 patent and they share the same specification. These patents relate to "methods and apparatus for providing power to devices on A.C. power circuits" and in particular concern using "light emitting diode (LED) based devices" with traditional A.C. power circuits controlled by conventional dimmers. The patent teaches that LED-based light sources are generally "incompatible with dimmer circuits that provide A.C. output signals" as they operate "based on substantially D.C. power sources," and thus do not brighten or dim like incandescent lights would in response to the "chopped" or non-standard A.C. signals produced by traditional A.C. dimmer circuits. This, of course, "impedes convenient substitution of LED-based light sources into pre-existing lighting systems in which conventional light sources are operated via A.C. dimmer circuits." In order to make LEDs compatible with signals from A.C. dimmer circuits, the patents disclose a "controller" to convert A.C. signal into a D.C. signal that can provide power to an LED-based light source. In some embodiments, the "controller" is comprised of "power circuitry" that "provides an essentially stable D.C. voltage as a power supply for the LED-based light source." The controller may also include an "adjustment circuit" that

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-4-

1 varies the light output of the LED in response to a user operating the traditional A.C. dimmer.

2 **U.S. Patent No. 7,348,604 (Exhibit 6 hereto)**

3 The '604 patent is titled "light-emitting module" and "pertains to the field of lighting
4 systems and in particular to a light-emitting module with versatile electromechanical mounting,
5 connecting, and assembly capabilities." The patent describes a module that is comprised of a
6 thermally conductive substrate that is "thermally connected" to one or more light-emitting
7 elements, a heat-dissipation element thermally coupled to said substrate, and "a housing element
8 including fastening means for detachably coupling the housing element to the heat dissipation
9 element." The patent also teaches that the "housing element" includes a "transparent region" that
10 enables "transmission of light emitted by the one or more light-emitting elements." According to
11 the patentee, the benefit of this simplified design is that it "improve[s] manufacturing, simplif[ies]
12 assembly, and provide[s] ease of maintenance." The module is also "further configured to provide
13 the ability to create a lighting system comprising multiple lighting-emitting modules through the
14 interconnection of two or more light-emitting modules."

15 **U.S. Patent No. 8,063,577 (Exhibit 7 hereto)**

16 The '577 patent discloses "[a] driver circuit for operating one or more light[-]emitting
17 diodes (LEDs)" designed for "operating a LED with high efficiency." LEDs need precise "voltage
18 or preferably current control" to operate because they "exhibit large current variation in response
19 to small voltage variation," which would result in varying brightness of the LED. This control can
20 be achieved by using a known "switched mode power supply" current-control system like a buck
21 converter, but such a system generally requires a "relatively large [electromagnetic interference]
22 filter" and a "relatively large inductor" and is not optimized for efficiency or size, a problem that
23 the drive circuit of the '577 patent is designed to rectify. The terms "connected in series" and
24 "coupled in series" are used to describe relationships between subcomponents of the primary
25 "driver circuit" described in the '577 patent's sole independent claim.

26 / / /

27 / / /

28

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-5-

**U.S. Patent No. RE49,320 (Exhibit 8 hereto)**

The '320 patent involves an LED lighting device with a built-in Radio Frequency (RF) antenna that allows a device to communicate with other devices and be operated via a remote control. But an LED lighting device's components are "made from electrically conductive materials ... that could ... significantly influence the RF communication with remote controls or other lamps." So the patent discloses a device in which such materials are located sufficiently below the antenna so they don't interfere with its RF signals. The antenna is also placed "in a portion of the external housing" of the lighting device (or "outer enclosure") made from "non-shielding material that does not disturb RF waves in reaching the antenna." One aspect of the invention is a "heat sink" that "may form part of the outer enclosure." The '320 patent also teaches that the LED "light source" is "arranged to generate light along an optical axis."

**Defendants Are Relying on a Single Technical Expert—Dr. Curran**

On July 22, 2024, Defendants served the "Opening Expert Report of John W. Curran, Ph.D. Regarding the Invalidity of the Asserted Patents" ("Curran Report").[4] The Curran Report is 263 pages long and contains 783 numbered paragraphs. It contains Dr. Curran's opinions that all 63 asserted patent claims in the six Patents-in-Suit are invalid.[5]

On August 7, 2024, Defendants' counsel confirmed during the parties' meet and confer that Dr. Curran is Defendants only technical expert witness.[6] Defendants' counsel also confirmed during the meet and confer that Dr. Curran would be issuing a rebuttal report on August 19, 2024 as to alleged non-infringement of all six Patents-in-Suit.[7] Signify expects that Dr. Curran's rebuttal report on non-infringement will be of similar length to his report on invalidity.[8]

/ / /

/ / /

/ / /

---

[4] Oczek Decl. at ¶ 8.
[5] *Id.*
[6] *Id.* at ¶ 9.
[7] *Id.*
[8] *Id.*

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(4)(A) provides that a "party may depose any person who has been identified as an expert whose opinions may be presented at trial" after the expert has submitted the expert's report. Such expert depositions are then subject to Rule 30.

Rule 30(d)(1) limits the duration of a deposition to one day of seven hours ***unless otherwise stipulated or ordered by the Court***.[9] As upheld by this Court, Rule 30(d)(1) also states that "the court must allow additional time consistent with Rule 26(b)(2) ***if needed to fairly examine the deponent*** or if the deponent, another person, or any other circumstance impeded or delays the examination."[10]

Further, the Advisory Committee's note for Rule 30 indicates "with regard to expert witnesses, ***there may more often be a need for additional time***—even after the submission of the report required by Rule 26(a)(2)—for full exploration of the theories upon which the witness relies."[11] Thus, when the deponent is an expert "extensions of time are particularly appropriate."[12] The Court has discretion to determine how much time is reasonable under the circumstances and whether a deposition may extend over more than one day.[13] Specifically, "[t]he court may also order that a deposition be taken for limited periods on several days"[14] upon a showing of "good cause" to justify the extension.[15]

/ / /

---

[9] *Mielke v. Standard Metals Processing, Inc.*, No. 2:14-cv-01763-JCM-NJK, 2015 U.S. Dist. LEXIS 60000, at *8 (D. Nev. May 7, 2015) (emphasis added).

[10] Emphasis added.

[11] Fed. R. Civ. P. 30(d)(2) Advisory Committee's note (2000) (emphasis added).

[12] See 8A Wright, Miller & Marcus, Federal Practice and Procedure, §2104.1, pp. 500-501.

[13] *See, Id*; *see also, Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 U.S. Dist. LEXIS 45662, at *4, *11 (D. Utah May 8, 2010).

[14] *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 U.S. Dist. LEXIS 45662, at *4, *11 (D. Utah May 8, 2010) (finding good cause to grant two additional deposition days to address the "complexity of the present [patent infringement] case" and the number of topics on which the expert is planning to offer testimony); 8A Wright, Miller & Marcus, Federal Practice and Procedure, §2104.1, pp. 500-501.

[15] *Id*; *see, e.g., Independence Park Apartments v. United States*, 59 Fed. Cl. 765, 769 (2004) (stating that "[e]xtra time 'must' be given under the Rule where 'good cause' is shown" where the party was unable in the seven-hour limit to conduct the necessary examination).

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-7-

"Good cause" is the threshold in which the court addresses the reasonableness and need for the requested additional discovery to facilitate a fair hearing of the matter on the merits against any prejudice to the opposing party.[16] The court is guided in this assessment by the underlying "common sense" purpose that the Rule are intended to accomplish[17] and "the universally recognized strong preference that cases be decided on their merits."[18] The court may consider a number of factors to determine whether good cause exists to extend a deposition.[19] "When determining if the burden or expense of the proposed [additional deposition] outweighs its likely benefit, the court evaluates, among other factors, the needs of the case, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[20] Specifically, these factors may include whether the expert witness will be questioned about numerous or lengthy documents, and the complexity and scope of the legal claims, facts, theories or opinions at issue.[21]

### IV. ARGUMENT

This is a complex patent infringement case involving six Patents-in-Suit directed to various LED lighting technologies in which a total of 63 patent claims are asserted against dozens of products.[22] As discussed above, these patents cover a significant range of inventions and products involving multiple scientific disciplines.[23] To address the complexity of, and disciplines on which, these patents are based, Signify has designated five technical experts and served five expert reports on infringement. Each of these five technical experts will also be issuing rebuttal

---

[16] *Jackson v. Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 U.S. Dist. LEXIS 237352, at *9 (D. Nev. Feb. 8, 2019) (finding "the burden of an additional , limited deposition . . . not so great to outweigh its likely benefit").
[17] *See, e.g., Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 592 (D. Nev. 2011).
[18] *Ashcraft v. Welk Resort Grp., Corp.*, No. 2:16-cv-02978-JAD-NJK, 2017 U.S. Dist. LEXIS 185470, at *16 (D. Nev. Nov. 8, 2017).
[19] Fed. R. Civ. P. 30(d)(2) Advisory Committee's Note (2000).
[20] *Id.*
[21] Fed. R. Civ. P. 30(d)(2) Advisory Committee's Note (2000); *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 U.S. Dist. LEXIS 45662, at *4, *11 (D. Utah May 8, 2010).
[22] *See* Complaint (ECF 1).
[23] Exhibits 3-8.

Weide & Miller, Ltd.
10655 Park Run Drive,
Suite 100
Las Vegas,
Nevada 89144
(702) 382-4804

-8-

expert reports on validity. Each of the five technical experts will be made available to Defendants for a full seven hours of deposition. Defendants will, therefore, have a total of five days to examine Plaintiff's experts, but now seek to use the fact that they have only identified a single expert to testify to the same issues as a justification for prohibiting Signify from fully and fairly deposing Dr. Curran. Defendants' position is unreasonable, and Signify has good cause to extend the duration of Dr. Curran deposition by three additional days.

The S*ynchronoss Techs, Inc. v. Dropbox, Inc,*[24] patent infringement case in the Northern District of California is instructive. There, the plaintiff Synchronoss opposed Dropbox's efforts to extend the deposition of plaintiff's expert beyond the presumptive seven-hours despite the fact that the expert had been designated to testify on "multiple topics" and had produced two expert reports pertinent to the dispute.[25] The court granted Dropbox's requested additional time holding, "[w]hile Synchronoss may designate the expert of its choice, it cannot strategically do so in an effort to stifle Dropbox's ability to properly depose an expert witness."[26]

The same is true here. The five Defendants should not be able to "stifle [Signify's] ability to properly depose [Dr. Curran]" because they collectively only identified a single expert witness to opine on both the validity and infringement claims of Signify. He has been proffered to testify on "multiple topics," including those covered in his 263-page report regarding the validity of all 63 claims asserted in this case, and as Defendants' only rebuttal expert, he will produce a second report (likely just as large) in response to the infringement allegations on the same 63 asserted claims and on each of the various accused products of the five Defendants.[27] Accordingly, Signify has good cause to extend the duration of his deposition to fully and fairly examine him on the issues raised in his reports and on which he will testify.

/ / /

---

[24] *Synchronoss Technologies v. Dropbox*, No. 4:16-cv-0019 (N.D. Cal. Feb. 28, 2019), "Order Regarding 2/11/19 Joint Letter." A copy of this order and the underlying Joint Letter are attached hereto for the convenience of the Court as **Exhibit 9**; *see also,* Oczek Decl. at ¶ 7.

[25] Exh. 9 (*Synchronoss Technologies v. Dropbox*, Order).

[26] *Id.*

[27] Oczek Decl. at ¶ 9.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

All of the facts of this case support a showing of good cause to extend Dr. Curran's deposition three additional days. The entirety of the technical defense in this case rests almost exclusively on Dr. Curran. He is to testify as to the validity of the six Patents-in-Suit and the 63 asserted patent claims, and he is also to testify as a rebuttal expert as to whether each of the dozens of accused products (in addition to SKU variations of the accused products) of five Defendants infringe the 63 asserted patent claims.[28] In order to fairly depose Dr. Curran as provided by Rule 30(d)(1), Signify will need to examine his invalidity opinions as to each and every element of all 63 asserted claims and his non-infringement opinions for the accused products of all five Defendants as to the same claims. This will require examining the basis of his opinions regarding prior art as to each asserted claim and assessing his application of the several relevant scientific disciplines and technologies at issue and their application to the many products alleged to be infringing. The sheer scale of the issues and the scope of the topics will make it impossible for Signify to cover all of the issues on which Dr. Curran opines in a single seven-hour deposition.[29]

In an effort to assess the time needed to engage in a "full exploration of the theories upon which the witness relies,"[30] Signify has carefully examined the complexity of the patent claims asserted, the technology at issue and the accused products subject to these claims and concluded that five discrete expert reports on five discrete general topics covering the six Patents-in-Suit and 63 asserted patent claims was required.[31] Signify made this determination based on the issues and before it knew that Defendants were only going to name one expert.[32] Because Dr. Curran's 263-page report and rebuttal report will cover both issues of infringement and invalidity, it is not unreasonable for Signify to have the same time Defendants will have to depose Signify's experts on the same matter: five days.[33] Nevertheless, because it will only have to cover Dr. Curran's background once and is optimistic that the examinations of some topics will lead to efficiencies

---

[28] *Id.*

[29] *Id.*

[30] *See,* Fed. R. Civ. P. 30(d)(2) Advisory Committee's note (2000).

[31] Oczek Decl. at ¶ 10.

[32] *Id.*

[33] *Id.* at ¶ 11.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-10-

1   in the examination of others, Signify reasonably assesses four total days will be sufficient.[34]

2   As such, there is good cause for the requested three additional deposition days. The claims
at issue are complex. The documents on which Signify must be prepared to examine Dr. Curran
are voluminous, involving a range of diverse technology disciplines for six Patents-in-Suit
covering 63 asserted claims, dozens of accused products, a 263-page initial report, a to-be-issued
rebuttal report likely of similar length, and hundreds of pages of referenced material. If broken
down just by claim, the requested additional time would leave Signify less than thirty minutes per
asserted claim to address Dr. Curran's opinions on both invalidity and non-infringement, or if by
patent, the four days would limit Signify to two hours per patent for validity issues and two hours
for infringement issues for the six asserted patents.

It should be noted that Defendants' counsel deposed one of Plaintiffs' technical experts
during the claim construction phase of the case and the expert was deposed for nearly three hours
***on a single claim term in just one of the Patents-in-Suit***.[35] And now, Defendants refuse to give
Plaintiffs' the full time needed to depose Dr. Curran on his two expert reports covering issues of
alleged invalidity and non-infringement of ***63 asserted patent claims in the six Patents-in-Suit***.

While these factors all weigh in favor of extending the time for the deposition, there are
simply no factors militating against additional time. Defendants will not be materially prejudiced
and Signify will compensate Dr. Curran pursuant to Rule 26(a)(4)(E) for his time and will take
his deposition at the location of Defendants' choosing.[36]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[34] *Id.*
[35] *Id.* at ¶ 12.
[36] *Id.*

## V. CONCLUSION

For the foregoing reasons, Signify respectfully requests the Court grant this motion and compel three additional days of deposition for a full and fair examination of Defendants' proffered technical expert witness, Dr. Curran.

DATED August 13, 2024.　　　　　　　　　　　Respectfully Submitted,

**WEIDE & MILLER, LTD.**

/s/ F. Christopher Austin
F. Christopher Austin, Esq. (SBN 6559)
caustin@weidemiller.com
Jeremy P. Oczek (Pro hac vice)
Email: jpoczek@bsk.com
Jonathan L. Gray (Pro hac vice)
Email: jlgray@bsk.com
*Counsel for Plaintiffs*
*Signify North America Corporation*
*and Signify Holding B.V.*

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

-12-

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that I am an employee of Weide & Miller, Ltd. and that on **August 13, 2024**, I served a full, true and correct copy of the foregoing **MOTION TO COMPEL A FULL AND FAIR EXAMINATION OF DEFENDANTS' SOLE TECHNICAL EXPERT WITNESS** via the United States District Court's CM/ECF filing system and thereby the foregoing document has been served to all counsel of record in this matter.

*/s/ F. Christopher Austin*
An employee of Weide & Miller, Ltd.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804