**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Signify North America Corporation, et al.,

    Plaintiffs

v.

Lepro Innovation Inc. et al.,

    Defendants

Case No.: 2:22-cv-02095-JAD-EJY

**Motion in Limine Order**

[ECF Nos. 183, 184]

    This is a patent-infringement suit over LED lighting products. Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") allege that defendants Lepro Innovation Inc., LE Innovation Inc., Innovation Rules Inc., Home Ever Inc., and Letianlighting Inc. (collectively, "Lepro") infringed several Signify patents covering various LED technologies. After summary judgment narrowed slightly the issues in this case, it is set to go to trial to determine liability on some claims, damages on others, and the applicability of some of Lepro's affirmative defenses.

    Lepro moves in limine to preclude Signify from introducing testimony about the ownership and corporate status of the various Lepro defendants, using "pejorative characterizations" of Lepro's conduct, or "bolstering" the U.S. Patent and Trademark Office (USPTO). For its part, Signify seeks to limit the testimony of Lepro's rebuttal expert John W. Curran. I deny Lepro's motion on all but one issue: Signify may not offer testimony or argument suggesting that its patents are valid by bolstering the USPTO. I also deny Signify's motion on all but one issue: Lepro's expert may not perform testing at trial that was not previously performed during discovery.

**Discussion**

"A motion in limine is a procedural mechanism [that is used] to limit in advance" of trial the scope of "testimony or evidence in a particular area" that will be permitted at trial.[1] Though not explicitly authorized by the Federal Rules of Evidence, the practice of ruling in limine on evidentiary issues is based on the "district court's inherent authority to manage the course of trials."[2] "However, in limine rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial."[3]

**A.    Lepro's motions in limine (ECF No. 183)**

Lepro moves to preclude Signify from introducing evidence that it believes is irrelevant to this case or overly prejudicial to its defense. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[4] Irrelevant evidence is not admissible.[5] And Federal Rule of Evidence (FRE) 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[6]

---

[1] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009).

[2] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[3] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (italics emphasis omitted) (citing *Luce*, 469 U.S. at 41–42).

[4] Fed. R. Evid. 401.

[5] Fed. R. Evid. 402.

[6] Fed. R. Evid. 403.

2

### 1. *Lepro's MiL #1: Signify may introduce testimony about the corporate ownership and status of Lepro entities.*

Lepro seeks to exclude testimony about the ownership of the five corporate defendants in this action. It argues that it "does not dispute . . . that each of the five defendant entities is jointly and severally liable for any judgment in this case" and has admitted that "each of the defendants [is] owned by related individuals, and are operated in part by those related individuals, specifically Ji Wu and Litao Xu, who are married."[7] In the joint pretrial order, Signify included additional facts about Wu and Xu's roles, as well as facts about individuals in other leadership roles within Lepro's companies.[8] Signify also intends to call Wu and Xu as witnesses at trial and anticipates asking them to explain their corporate titles and responsibilities.[9] And it plans to introduce the testimony of Tianying Li, the former president and registered agent of Letianlighting Inc. and contends that it needs to be able to introduce evidence explaining her role.[10] Lepro argues that such information is irrelevant because it has already admitted that Wu and Xu owned and operated all five companies.

Lepro's motion is denied. It fails to provide any cogent argument for why information about corporate officers and ownership is irrelevant here. At a minimum, knowing the roles and authority that each witness has within the defendant companies may be relevant to the jury's credibility determinations. It also may weigh on the question of willful infringement. As the Federal Circuit has explained in *Wechsler v. Macke International Trade, Inc.*, a corporate officer's negligent or bad-faith belief that a patent was invalid or not infringed "might support a

---

[7] ECF No. 183 at 4.
[8] ECF No. 178 at 6, ¶¶ 14–25.
[9] ECF No. 186 at 4.
[10] *Id.*

3

finding of willful infringement by the corporation."[11]  The jury is entitled to know and understand who the defendant corporations' officers are and what roles they played when evaluating the import of their testimony.

The nonbinding case law that Lepro relies on to suggest that their roles are irrelevant is unpersuasive.  In *Riley v. Ford Motor Co.*, the Southern District of Mississippi granted a motion in limine to exclude "any reference to [the defendants'] corporate representatives" because "[t]he presence, absence, or identity of [d]efendants' corporate representatives [was] wholly irrelevant" to the plaintiffs' negligence claims stemming from a car accident.[12]  There are no similarities that I can derive from the cause of action in *Riley* and the patent-infringement case at issue here.  The same goes for Lepro's remaining cases.  In *Keefe v. LendUS LLC*, the District of New Hampshire granted a motion to preclude testimony about the defendant's corporate structure in an ERISA claim.[13]  And in *Martensen v. Koch*, the District of Colorado precluded testimony of a defendant's tax structure because it was irrelevant to the plaintiff's false-imprisonment claim.[14]  Lepro fails to explain how these inapposite cases inform a relevance analysis in a patent-infringement case in which a corporate officer's knowledge may be relevant to triable questions of fact.

Lepro's suggestion that this type of information would be confusing to a jury and thus should be precluded under FRE 403 also fails.  It does not explain exactly why or how this

---

[11] *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1292 (Fed. Cir. 2007) (citing *Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1356 (Fed. Cir. 2001)).

[12] *Riley v. Ford Motor Co.*, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011) (order on motions in limine); *see also Riley v. Ford Motor Co.*, 2011 WL 2516595, at *1 (S.D. Miss. June 23, 2011) (order on summary-judgment motions, explaining the factual background of plaintiffs' claims).

[13] *Keefe v. LendUS LLC*, 659 F. Supp. 3d 196, 203 (D.N.H. 2023).

[14] *Martensen v. Koch*, 2015 WL 390006, at *1 (D. Colo. Jan. 28, 2015).

4

information would be confusing—it merely states that this case "does not present any issue related to corporate laws or regulations" and "it does not matter who was treasurer or president of what entity or when . . . ." But those are relevance arguments—Lepro does not explain why providing this information would confuse the jury. Indeed, it seems as though it would be more confusing to the jury if Signify were prevented from asking questions to identify a witness's role. So I deny Lepro's motion to exclude evidence related to "the Lepro entities' officers, ownership, incorporation status, and documentation filed with the Nevada Secretary of State."[15]

### 2. Lepro's MiL #2: Lepro's motion to preclude "pejorative characterizations" of defendants' conduct is denied.

Lepro asks that Signify be precluded from "introducing evidence, testimony, or argument characterizing Lepro by any derogatory, disparaging, or pejorative term and from characterizing Lepro's conduct as 'dishonest,' 'copying,' 'misappropriating,' 'trespassing,' or similar terms under FRE 401, 402, and 403."[16] It also "understands from discovery that Signify's damages expert and its corporate representative plan to assert at trial—without any support beyond Signify's 'belief'—that there has been an 'explosion' of Chinese companies that are providing 'copycat' products, and that Lepro is an example of this."[17] Lepro contends that Signify has no evidence that Lepro copied or reverse engineered Signify's products, so using any of those terms

---

[15] ECF No. 183 at 5. Lepro also contends that introducing these facts would be prejudicial because it "believes Signify seeks to introduce [them] to suggest, incorrectly, that Lepro has engaged in nefarious behavior of some sort." *Id.* at 6. Lepro does not provide any context to clarify what "nefarious behavior" this information could support or why it believes that Signify plans to use it for that purpose. Lepro's argument is speculative and unfounded and, without more, does not warrant the preclusion of this type of evidence.

[16] ECF No. 183 at 6. Signify agreed not to use terms like "greedy," "corrupt," "evil," "stealing," or "pirating." *Id.*

[17] *Id.* at 7.

5

is irrelevant and overly prejudicial. Signify contends that Lepro's arguments are speculative because it does not yet know what the evidence will show.

Lepro characterizes as "pejorative" words that are commonly used to describe conduct that can amount to willful infringement. If Signify presents evidence that Lepro copied or misappropriated its patented products, it will not be precluded from using those terms. If Signify catches a Lepro witness telling lies or half-truths, it will not be precluded from characterizing that testimony as dishonest. Because I do not know what the evidence will show at this point, I deny the motion without prejudice to Lepro's ability to raise it if the evidence does not permit the use of specific terms and doing so would be overly prejudicial. But I generally caution the parties that I expect them to conduct themselves as officers of the court, and the use of truly pejorative depictions of an opposing party will not be tolerated.

And at this stage I do not preclude testimony concerning an "explosion" of "copycat" products from Chinese companies. Signify's corporate representative made that statement when expounding on how competitive the LED-lighting market is, and Signify's damages expert cited it to support the fact that the market has "many competitors" when completing his damages analysis. Neither reference explicitly groups Lepro with those "copycat" companies or says anything directly derogatory about Lepro. Lepro has failed to show that this statement would be irrelevant or overly prejudicial if introduced in a similar context, so I do not preclude it and I deny Lepro's second motion in limine.

### 3. *Lepro's MiL #3: Lepro's motion to preclude commentary on the presence or absence of witnesses is denied.*

Lepro asks that the court "preclude Signify from introducing evidence, testimony, or argument regarding the absence of Lepro's corporate representatives at trial, as well as Lepro's

decision to call—or not call—a particular witness."[18]  Signify contends that Lepro's motion is speculative because it fails to identify "anything in th[is] case suggesting that Signify will attempt to put on evidence regarding the presence or absence of witnesses."[19]  It also contends that it would "lead to absurd results" because it would prevent Signify from explaining why some unavailable witnesses "are testifying via deposition video."[20]

      I conclude that this issue is too speculative to rule on.  As Signify points out, the parties haven't exchanged final witness lists, so its unclear which of defendants' witnesses will (or will not) be attending trial.  And courts have concluded in some instances that it may be appropriate to comment on the absence or presence of corporate representatives if the facts and evidence support that comment.[21]  Nor has Lepro shown that the information is irrelevant or overly prejudicial at this stage.  So I deny Lepro's motion without prejudice.

    **4.**    ***Lepro's MiL #4: Lepro's motion to preclude commentary bolstering the USPTO is granted in part.***

      Lepro wishes to preclude Signify from "introducing evidence, testimony, or argument praising, lauding, or bolstering the U.S. Patent and Trademark Office (USPTO), its examiners, or the examination process for the asserted patents or any patent application generally."[22]  It alleges that Signify agreed to avoid evidence or argument "disparaging" the USPTO but wouldn't agree to preclude evidence or argument "bolstering" it because that term is vague.[23]  Signify contends

---

[18] *Id.* at 8.
[19] ECF No. 186 at 9.
[20] *Id.*
[21] *Id.* at 10 n.38, 39 (collecting cases).
[22] ECF No. 183 at 10.
[23] *Id.*

7

that granting Lepro's motion could keep it from introducing evidence of USPTO proceedings that are relevant to issues before the jury.[24]

     I grant Lepro's motion in part. Signify's argument that "bolstering" or "praising" are vague terms is unpersuasive. Lepro's meaning behind this motion appears plain: Signify may not suggest, through argument or testimony, that the USPTO's recognition of its patents or the outcome of USPTO proceedings means that the patents are valid because the USPTO has specialized expertise or is generally right about its decisions. This does not preclude the parties from introducing testimony or argument about relevant factual developments that occurred during USPTO proceedings. I expect the parties to use their common sense when asking questions and making arguments related to the USPTO. Lepro is entitled to object if it believes that Signify is "bolstering" the USPTO's methods and conclusions rather than simply eliciting facts about USPTO proceedings.

**B.**  **Signify's motions in limine (ECF No. 184)**

     Signify moves to limit the testimony of Lepro's rebuttal expert, Dr. John Curran.[25] FRE 702, as construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, imposes a "gatekeeping role" on the court in assessing whether to admit expert testimony.[26] An expert may offer opinion testimony at trial if "the testimony is based on sufficient facts or data, . . . is the product of reliable principles and methods, and . . . reflects a reliable application of the principles and methods to the facts of the case."[27] And Federal Rule of Civil Procedure 26 requires that parties

---

[24] ECF No. 186 at 12.

[25] ECF No. 184.

[26] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[27] Fed. R. Evid. 702(b)–(d). Signify does not appear to dispute that Dr. Curran has scientific, technical, or otherwise specialized knowledge that will help the trier of fact understand the evidence in this case.

disclose an expert's report, which must contain "a complete statement of all opinions the witnesses will express and the basis and reasons for them," as well as "the facts or data considered by the witness" in forming his opinions and "any exhibits that will be used to summarize or support them."[28]

### 1.   *Signify's MiL #1: Dr. Curran may provide his opinions on whether the accused products have a heat sink that infringes on the '320 patent.*

At the claim-construction phase of this case, the parties disputed the meaning of the '320 patent's language, "the heat sink forming at least a portion of an outer enclosure."[29] Signify asked that the phrase be construed by its plain and ordinary meaning, while Lepro wanted to construe it to mean "at least a segment of an outer enclosure is formed by a heat sink such that the heat sink is exposed to the outside."[30] I rejected Lepro's construction because the specification did not support that limitation.

Signify seeks to preclude Dr. Curran's opinions related to this heat-sink language. It argues that Curran's opinion essentially concludes that Lepro's accused products don't infringe on the '320 patent because Lepro's "heat sink" element is "an interior metal structure" that is not exposed to outside air and thus does not form "at least a portion of the outer enclosure" as defined in the patent. Signify contends that Dr. Curran's testimony contradicts the court's claim-construction order by injecting the rejected construction that a heat sink needs to be exposed to outside air to infringe.[31]

---

[28] Fed. R. Civ. P. 26(a)(2)(B).
[29] *See* ECF No. 91 at 57.
[30] *Id.*
[31] ECF No. 184 at 10–11.

Lepro contends that Curran's opinion does not contradict that construction because he "has not opined (and will not opine) that the claims require the heat sink to be 'exposed to the outside.'"[32] He instead will essentially testify that the structure in Lepro's products that Signify identified as the infringing heat sink is not a heat sink because it is enclosed in a plastic that "restricts heat from flowing through it to the outside."[33] Lepro argues that this is "a classic battle-of-the-experts dispute" and that the jury should be permitted to hear Dr. Curran's opinion on whether the metal lining that Signify contends is an infringing heat sink meets the patent's plain and ordinary meaning.[34]

I find that Dr. Curran's opinion does not contradict the claim-construction order. Lepro has explained that Dr. Curran will not opine that the patent's heat-sink limitation requires exposure to outside air. He will instead explain why the qualities of the accused product's metal lining is not an infringing heat sink for reasons that relate to, but do not necessarily require, exposure to outside air. That difference distinguishes this case from the Federal Circuit's opinion in *Finjan Inc. v. Secure Computing Corp.*[35] In *Finjan*, the district court construed the claim "addressed to a client" as having its plain and ordinary meaning, rejecting the defendant's contention that "addressed" meant "containing the IP address of the client computer."[36] The Federal Circuit upheld the district court's preclusion of the defendant's expert testimony that "the asserted claims require an IP address," explaining that the testimony "attempted to resurrect

---

[32] ECF No. 187 at 5.
[33] *See id.* (citing Curran's deposition).
[34] *Id.*
[35] *Finjan Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010).
[36] *Id.* at 1206–07.

10

a claim construction that the district court already rejected."[37]  While *Finjin*'s holding may limit Dr. Curran from testifying that, to infringe, a light bulb's heat sink must touch air, it does not preclude him from testifying about why, in Lepro's case, certain qualities of the accused products' heat sink mean that it doesn't infringe.  So I deny Signify's motion to preclude Dr. Curran from expressing his opinions concerning whether the accused products infringe on this heat-sink limitation.

> **2.  *Signify's MiL #2:  Dr. Curran may testify about flaws in Dr. Pattison's testing concerning the greater-than-background-noise limitation, subject to possible limiting instructions.***

Signify next contends that Dr. Curran should be precluded from "opining at trial that it is not possible to prove infringement of the '336 patent because infringement would vary based on context, or that the accused bulbs must infringe in all possible contexts."[38]  This opinion arises from the patent's claims requiring that the claimed lighting fixture generates a lighting spectrum wherein "the visible portion of said resulting spectrum has intensity greater than background noise at its lowest spectral valley."  At the claim-construction hearing, Lepro contended that the term "background noise" was indefinite because it would vary "depending on the lighting conditions in the environment surrounding the lighting fixture."[39]  I rejected that argument, finding that "the fact that background noise is not a constant doesn't make it immeasurable."[40]  I went on to explain that, "even if it does mean that infringement can only be determined after the lighting fixture is used in a particular environment, that is not grounds for finding the term

---

[37] *Id.* at 1207.
[38] ECF No. 184 at 12.
[39] ECF No. 91 at 5–6.
[40] *Id.* at 6.

11

indefinite."[41]  I construed "background noise" to mean "electromagnetic radiation produced independent of the lighting fixture."[42]

     Signify's technical expert Dr. Morgan Pattison conducted two tests of one accused bulb in two environments: "(1) in a dark room, and (2) in a room with windows with the translucent shades drawn," and he concluded that the bulb infringed on the claim that "the visible portion of [the] resulting spectrum has intensity greater than background noise at its lowest spectral valley."[43]  Dr. Curran disagreed in his rebuttal report, opining that Dr. Pattison's testing conditions were unreliable and were "not representative of how the accused products are likely to be used."[44]  He concluded that, "at most, Dr. Pattison has shown infringement by the single bulb that he tested in two artificial situations" and "has not provided any reason to believe that any other bulbs are used in these conditions, and thus has not shown that any other bulbs infringe."[45]

     Signify contends that Dr. Curran's opinions contradict my claim-construction conclusion that "background noise" is not an indefinite term.[46]  It argues that my ruling precludes Dr. Curran "from testifying at trial that it is impossible to show infringement because the infringement would vary based on context, or, conversely, that to show infringement the bulbs must infringe in all possible contexts" because that opinion essentially suggests indefiniteness.[47]  It also seeks to preclude testimony "that Dr. Pattison did not perform testing in sufficiently representative

---

[41] *Id.*
[42] *Id.*
[43] ECF No. 184 at 12.
[44] ECF No. 187-1 at 25.
[45] *Id.*
[46] ECF No. 184 at 13.
[47] *Id.* at 14.

12

conditions, or that any other bulbs are used in these conditions to demonstrate infringement."[48] Signify attests that it is sufficient for it to show that the accused products infringe in some contexts,[49] so Dr. Curran's opinion would confuse the jury by implying that the products need to infringe in all (or at least more than two) contexts.

Lepro responds that Dr. Curran's opinion really focuses on the inadequacies of Dr. Pattison's testing, arguing that "[t]he fact that Dr. Pattison used a test that could be manipulated to show infringement is highly relevant to whether Signify can bear its burden of proof."[50] I've reviewed Dr. Curran's report and agree that the focus of his opinion is the allegedly unreliable nature of Dr. Pattison's testing, which is obviously relevant to whether his opinion proves infringement. So Dr. Curran's opinions going to whether Dr. Pattison's tests were "flawed and unreliable" are admissible to rebut a showing of infringement.

Lepro appears to concede that Dr. Curran's opinions concerning whether the artificial testing conditions are representative of how the accused bulbs are likely to be used or whether other bulbs are likely to be used in those contexts are not relevant to liability.[51] It rather suggests that "the amount of infringement that occurs" and "the circumstances of the infringement" are relevant to damages, findings concerning the "utility and value of the claimed inventions in the '336 patent," and to evaluate the credibility of Dr. Pattison's testimony.[52] Dr. Curran's opinions do appear relevant to those issues, so precluding Dr. Curran's testimony about them is not the

---

[48] *Id.*

[49] *Id.* ("It is well settled that an accused device that sometimes, but not always, embodies a claim nonetheless infringes." (quoting *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (internal citations omitted))).

[50] ECF No. 187 at 7.

[51] *Id.*

[52] *Id.*

13

proper solution. Signify may instead seek limiting instructions about the jury's consideration of his opinions.

      Finally, Lepro contends that Dr. Curran's anticipated testimony that Dr. Pattison hasn't shown—based on the test of one bulb—that the other accused products infringe is relevant to the question of liability. "When a patentee with the burden of proof seeks [liability on] infringement, it must make a prima facie showing of infringement as to each accused device before the burden shifts to the accused infringer to offer contrary evidence."[53] The burden is on the plaintiff to show that its tested product is representative of the other accused products.[54] So Lepro is entitled to cross-examine Dr. Pattison about the representativeness of his testing and, if necessary, present contrary evidence to suggest that the test bulb is not representative of all Lepro's accused products. On this record I cannot conclude that Dr. Curran should be precluded from providing that sort of testimony. So I deny Signify's second motion in limine, with the caveat that Signify may seek limiting instructions concerning the jury's consideration of Dr. Curran's testimony, if appropriate.

---

[53] *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006).

[54] *See, e.g.*, *Mobile Telecomms. Techs., LLC v. Samsung Telecomms. Am. LLC*, 2014 WL 7146971, at *2 (E.D. Tex. Dec. 12, 2024) ("It is without question that [the plaintiff] must prove infringement for each of the accused products . . . and that [the plaintiff] bears the risk of using representative products."); *CAO Lighting, Inc. v. Gen. Elec. Co.*, 2023 WL 1930354, at *10 & n.9 (declining to strike expert testimony of infringement based on defendants' argument that the expert didn't opine on the representativeness of a tested product, finding that whether the plaintiff's expert showed representativeness goes to weight, not admissibility); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350–51 (Fed. Cir. 2010) (upholding infringement verdict based on representative testing in which the defendant's own expert "acknowledged that the accused devices were similar in structure" and thus that "a representative analysis of the accused products was appropriate").

### 3. *Signify's MiL #3: Dr. Curran may not demonstrate at trial testing that he did not perform for his rebuttal report.*

Signify lastly seeks to preclude Dr. Curran from "demonstrating test equipment and/or test measurements with respect to the '336 patent."[55] It notes that Dr. Curran's rebuttal report opines on the flaws in Dr. Pattison's testing and states that Dr. Curran "could demonstrate using the testing equipment that Dr. Pattison used—and plan[s] to demonstrate at trial if asked—[that] Dr. Pattison's measurements could be manipulated to change the measured intensities simply by moving the Nanolamba sensor relative to the light source."[56] He also opined that he could demonstrate "measurements in more typical conditions" that would show flaws in Dr. Pattison's measurements of background noise.[57] But Dr. Curran did not perform any such tests for his rebuttal report, and Signify contends that allowing him to do so for the first time at trial would deprive Signify of the "reasonable opportunity to prepare effective cross examination or to provide any rebuttal testimony from its own experts."[58] Lepro responds that Dr. Curran sufficiently explained what variables could be changed in Dr. Pattison's experiments to achieve different results and Signify was able to cross-examine him about those opinions.[59]

I grant Signify's motion because it would be unfair surprise to permit Dr. Curran to perform tests without having done so during discovery. Federal Rule of Civil Procedure 26(a) requires experts to provide a report that contains "a complete statement of all opinions [that] the witness will express and the basis and reasons for them" and "the facts and data considered by

---

[55] ECF No. 184 at 15.
[56] ECF No. 187-1 at 24, ¶ 77.
[57] *Id.* at 25, ¶ 79.
[58] ECF No. 184 at 17.
[59] ECF No. 187 at 8–9.

15

the witness in forming them."[60]  "The purpose of the expert-disclosure rule is to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."[61]  Though Dr. Curran opined that some testing manipulations *could* produce different results, Signify was unable to review any such alternative testing to see what those differences were, determine whether they actually undermined Dr. Pattison's conclusions, ask follow-up questions during Dr. Curran's deposition about what those alternative results mean, or secure rebuttal testimony based on the results. Allowing Dr. Curran to perform those tests for the first time at trial would deprive Signify of the ability to effectively cross-examine him or introduce competing evidence.  So Dr. Curran may testify about the flaws he perceives in Dr. Pattison's testing, but he may not demonstrate those flaws via testing performed for the first time at trial.

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion in limine **[ECF No. 184] is GRANTED in part.**  Lepro's motion in limine #4 is granted in part: Signify may not offer testimony or argument suggesting that its patents are valid by bolstering the USPTO, but it may present evidence concerning factual developments that occurred during USPTO proceedings. **Lepro's motion is DENIED in all other respects.**

---

[60] Fed. R. Civ. P. 26(a)(2)(B)(i).

[61] *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (cleaned up).

1    IT IS FURTHER ORDERED that plaintiffs' motion in limine **[ECF No. 183] is**
2 **GRANTED in part.** Signify's motion in limine #3 is granted: Lepro's expert Dr. John Curran
3 may not conduct new testing at trial. **Signify's motion is DENIED in all other respects**

_____
U.S. District Judge Jennifer A. Dorsey
December 30, 2025