F. Christopher Austin (SBN 6559)
LEX TECNICA, LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (725) 239-8413
chris@lextecnica.com

Jeremy P. Oczek (Pro hac vice)
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7000
Email: jpoczek@bsk.com

Jonathan L. Gray (Pro hac vice)
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8500
Email: jlgray@bsk.com

Adam D. Swain (Pro hac vice)
ALSTON & BIRD
950 F Street, NW
Washington, DC 20004
Telephone: (202) 239-3622
Email: Adam.Swain@alston.com

J. Ravindra Fernando (Pro hac vice)
ALSTON & BIRD
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1136
Email: Ravi.Fernando@alston.com

Natalie C. Clayton (Pro hac vice)
ALSTON & BIRD
90 Park Avenue, 15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9573
Email: Natalie.Clayton@alston.com

*Counsel for Plaintiffs*
*Signify North America Corporation*
*and Signify Holding B.V.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.<br><br>        Plaintiffs,<br><br>vs.<br><br>LEPRO INNOVATION INC, LE INNOVATION INC, INNOVATION RULES INC., HOME EVER INC., and LETIANLIGHTING, INC.,<br><br>        Defendants. | Case No.: 2:22-cv-02095-JAD-EJY<br><br>**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285** |

## TABLE OF CONTENTS

**Page**

I.  LEGAL STANDARD ................................................................................................ 2

II. ARGUMENT ......................................................................................................... 3

   A.  Lepro's callous disregard toward Signify's patents and suit ................................... 3

   B.  Lepro's substantively weak case and unreasonably late withdrawal of
       defenses ........................................................................................................ 4

   C.  Lepro's unreasonably late patent exhaustion and *Daubert* motions ...................... 7

   D.  Lepro's substantively weak case and unreasonable conduct before trial ............. 10

   E.  Required information under LR 54-14 ................................................................ 12

III. CONCLUSION ..................................................................................................... 18

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alternative Petroleum Techs. Holdings Corp. v. Grimes*,
No. 3:20-cv-00040-MMD-CLB, 2022 U.S. Dist. LEXIS 157738
(D. Nev. July 25, 2022)...............................................................................................12

*Amazon.com, Inc. v. PersonalWeb Techs. LLC (In re PersonalWeb Techs. LLC)*,
85 F.4th 1148, 1160 (Fed. Cir. 2023) .............................................................4, 5, 7

*Andrews v. Equinox Holdings*,
570 F. Supp. 3d 803 (N.D. Cal. 2021) ....................................................................17

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)....................................................................................................2

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..................................................................................................12

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ......................................................................................13

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
No. 13-cv-00159 CW, 2014 U.S. Dist. LEXIS 129717
(N.D. Cal. Sept. 15, 2014) ..........................................................................................7

*Location Based Servs., LLC v. Niantic, Inc.*,
No. 17-cv-04413 NC, 2018 U.S. Dist. LEXIS 232062
(N.D. Cal. Feb. 16, 2018)........................................................................................4, 7

*Mayorga v. Ronaldo*,
656 F. Supp. 3d 1218 (D. Nev. 2023) .....................................................................17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)................................................................................................1, 2

*Perfect 10 Inc. v. Giganews, Inc.*,
No. CV 11-07098-AB, 2015 U.S. Dist. LEXIS 54063
(C.D. Cal. Mar. 24, 2015) .........................................................................................17

*Spectralytics, Inc. v. Cordis Corp.*,
649 F.3d 1336 (Fed. Cir. 2011)..................................................................................2

*Tech. Props. v. Canon Inc.*,
No. C 14-3640 CW, 2017 U.S. Dist. LEXIS 219618 (N.D. Cal. Apr. 12, 2017)....................18

*Transclean Corp. v. Bridgewood Servs., Inc.*,
290 F.3d 1364 (Fed. Cir. 2002)..................................................................................2

ii

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
130 F. Supp. 3d 1331 (C.D. Cal. 2015) ...............................................................17, 18

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
No. 20-cv-05501-EJD, 2024 U.S. Dist. LEXIS 48624
(N.D. Cal. Mar. 19, 2024) ...................................................................................4, 5

*Wash. World Inc. v. Belanger Inc.*,
666 F. Supp. 3d 808 (E.D. Wis. 2023)................................................................3, 4

**Statutes**

35 U.S.C. 285...............................................................................................................3, 18

35 U.S.C. § 112 ...............................................................................................10, 11, 15, 16

35 U.S.C. § 285 ...................................................................................................2, 4, 7, 12

35 § U.S.C. 102(e) ........................................................................................................10

**Other Authorities**

LPR 1-1 through 1-23 ......................................................................................................16

LPR 1-6...........................................................................................................................13

LPR 1-10 .........................................................................................................................13

LR 26-1 ...........................................................................................................................14

LR 54-1 ...........................................................................................................................16

LR 54-14 ....................................................................................................................12, 13

LR 54-14(b)(1)............................................................................................................13, 16

LR 54-14(b)(2)................................................................................................................16

LR 54-14(b)(3)(I)............................................................................................................18

LR 54-14(b)(3)(A) ..........................................................................................................16

LR 54-14(b)(3)(B) ..........................................................................................................16

LR 54-14(b)(3)(C) ..........................................................................................................17

LR 54-14(b)(3)(D) ..........................................................................................................17

LR 54-14(b)(3)(E)...........................................................................................................17

LR 54-14(b)(3)(F)...........................................................................................................17

iii

LR 54-14(b)(3)(G) ................................................................................................17

LR 54-14(b)(3)(H) ...............................................................................................18

LR 54-14(b)(3)(J)..................................................................................................18

LR 54-14(b)(3)(K) ...............................................................................................18

LR 54-14(b)(3)(L) ................................................................................................18

iv

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

An exceptional case calling for an award of attorneys' fees is one "that stands out from others with respect to the substantive strength of a party's litigating position [] or the unreasonable manner in which the case was litigated."[1] Both the lack of substantive strength of Lepro's litigation positions and the unreasonable way Lepro litigated and tried this case warrant an award of attorney fees to Signify.

On February 11, 2026, the jury returned a verdict for Signify finding that Lepro had willfully infringed each of the Patents-in-Suit. For three of these patents ('138, '399, and '577 Patents), this was a foregone conclusion. For each of these three patents, this Court had determined they were infringed before trial even began; mid-way through trial, Lepro dropped its invalidity defenses; and in closing arguments, Lepro conceded the damages numbers. Lepro's tactics came at significant cost to Signify. While Lepro knew it would concede these issues, Signify did not learn of it until the trial was nearly over. Thus, Signify was required to expend significant resources preparing the invalidity and damages issues for trial—all of which would have been unnecessary if Lepro had conceded on these patents before trial.

Lepro's dilatory litigation and trial tactics do not end there. Lepro also put on no evidence of non-infringement for the '336 Patent (which this Court previously found valid); Lepro attempted to back-door in a belated affirmative defense of patent exhaustion; and Lepro tried a frivolous and late *Daubert* challenge, the dubious basis of which only became more clear throughout the trial. Indeed, the record reflects that throughout the course of this case, Lepro forced Signify to prove its case while failing to adduce *any* evidence of its own in support of most of its non-infringement and invalidity defenses.

Trial also confirmed Lepro's callous disdain for the litigation. Signify presented substantial evidence that Lepro ignored Signify's notice letters for *years* and that Lepro's owner didn't care about the case because, in his words, it was "not much money anyway." This derisive attitude was shared by Lepro's counsel, who attempted to excuse Lepro's dilatory tactics by arguing there was

---

[1] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014).

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

"very little at stake."[2] At trial, however, it became clear that Lepro itself had failed to identify or produce sales information—including from significant retailers like Walmart—because they deemed such information "unnecessary" (despite previously stating in a declaration to the Court that sales came from only two sources, neither of which was Walmart).

Given Lepro's callous disdain, its weak and/or nonexistent defenses, its willful infringement of Signify's patents, and its conduct both during litigation and at trial, Signify respectfully requests recovery of its reasonable attorney fees under 35 U.S.C. § 285.

## I.    LEGAL STANDARD

Under 35 U.S.C. § 285, the district court may award reasonable attorney fees to the prevailing party in "exceptional" cases. As set out by the Supreme Court, an exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[3] "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[4] In assessing the totality of the circumstances, courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[5] The movant must prove exceptionality by a preponderance of the evidence.[6]

Further, the presumptions of exceptionality shift once a finding of willfulness has been made: "Although an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision *not* to award attorney fees."[7]

---

[2] *See, e.g.*, ECF No. 261 at 122:22-25 ("[W]e did not prepare *Daubert* motions in the context of a case where there were very—there's very little at stake . . . .").

[3] *Octane Fitness,* 572 U.S. at 554.

[4] *Id*.

[5] *Id*. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994)).

[6] *Id*. at 557.

[7] *Spectralytics, Inc. v. Cordis Corp*., 649 F.3d 1336, 1349 (Fed. Cir. 2011) (emphasis added); *see also Transclean Corp. v. Bridgewood Servs., Inc*., 290 F.3d 1364, 1379 (Fed. Cir. 2002) ("[T]he

2

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

## II.    ARGUMENT

The jury found that Lepro infringed each of the Patents-in-Suit willfully, and the record provides a substantial basis for awarding attorneys' fees to Signify. In fact, the record supports that Lepro's actions were objectively unreasonable in the factual and legal components of the case: by adopting an indifferent posture to Signify's patent claims, by forcing Signify to put on a full case against baseless and, often, withdrawn defenses, and by its dilatory trial tactics. These facts support the award of attorney fees as compensation and as a deterrent for the reckless behavior displayed by Lepro.

### A.    Lepro's callous disregard toward Signify's patents and suit

Courts consider statements made by parties indicating indifference or lack of remorse as part of the totality of circumstances for awarding attorney fees. For example, in *Wash. World Inc. v. Belanger Inc.* the court awarded attorney fees in part because of the behavior of defendant's President who left the courtroom following the jury verdict "whistling" and commenting that the verdict "was no big deal."[8] The *Wash. World* court noted that this behavior "shows a lack of remorse and suggests a need to send a message of deterrence."[9] Here, there is similar evidence of lack of remorse from Lepro's owner, Mr. Ji Wu. In WeChat messages, Mr. Wu stated that Lepro would simply stop selling any products found to infringe, and that the money at stake was insufficient to take the matter seriously:

> *And we would rather not do this product line than pay the global sales percentage patent fee, and ultimately do business in [vain]. Although Signify has many patents, they are all patents on products that are not very profitable….We won't produce products that are judged to be infringing by legal action. Anyway, we don't have a*

general rule [is] that the district court must normally explain why it decides that a case is not exceptional under 35 U.S.C. § 285 when a factual finding of willful infringement has been established and, if exceptional, why it decides not to award attorney fees.")

[8] 666 F. Supp. 3d 808, 831 (E.D. Wis. 2023).

[9] *Id.*

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

*factory or heavy assets, so we can stop any products [lines] that we want. . . .*

*Thank you very much, Mr. Shen. You don't need to contact the person in charge of Signify patents, it is not significant. I think there is no possibility of reaching an agreement with their legal team. Maybe the follow-up will be lawsuits every year....So we will not sell the winning products. It is not much money anyway.[10]*

Lepro also adduced no evidence that it conducted an analysis of the patents before the suit was filed despite being on notice of Signify's patents from at least 2017, or that it engaged with Signify in any meaningful manner to resolve the dispute.[11] Lepro's callous disregard reveals that it was wholly indifferent to the rights of Signify and intent on dragging out litigation in bad faith. Like in *Wash. World*, this supports an award of attorneys' fees.

**B.    Lepro's substantively weak case and unreasonably late withdrawal of defenses**

Courts in the Ninth Circuit have considered failure to adduce evidence in support of a party's position as evidence of the substantive weakness of the party's case and grounds for exceptionality under 35 U.S.C. § 285.[12] Evidence that a party unnecessarily prolonged an action also justifies an award of attorneys' fees.[13]

---

[10] ECF No. 284 at 4-5.

[11] Indeed, Lepro's only testimony of an attempt at settlement was at a *court-ordered* settlement conference four months before trial was set to begin. *See* ECF No. 265 (Trial Tr., Feb. 6, 2026) at 128:4-9, ECF No. 181 (Minutes of Proceedings—Settlement Conference).

[12] *See Location Based Servs., LLC v. Niantic, Inc.,* No. 17-cv-04413 NC, 2018 U.S. Dist. LEXIS 232062, at *2-3 (N.D. Cal. Feb. 16, 2018) ("As to the substantive strength (or weakness) of a party's litigation position, courts in this district tend to award fees when a [party]…adduces no evidence in support of its position.").

[13] *See Amazon.com, Inc. v. PersonalWeb Techs. LLC (In re PersonalWeb Techs. LLC)*, 85 F.4th 1148, 1160 (Fed. Cir. 2023) (affirming district court's award of fees where party "unnecessarily prolonged the action" by refusing to stipulate to non-infringement despite adverse claim construction.), *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.,* No. 20-cv-05501-EJD, 2024 U.S. Dist. LEXIS 48624, at *26 (N.D. Cal. Mar. 19, 2024) (party refusing to drop baseless claims and unnecessarily prolonging litigation provided basis for fee award).

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

Here, Lepro failed to adduce evidence in support of several defenses at trial. Following a series of adverse rulings at summary judgment,[14] Lepro was left with only a handful of technical patent defenses for trial: non-infringement for the '320, '604, and '336 Patents; and invalidity for the '604, '577, '399, and '138 Patents. Incredibly, after forcing Signify to litigate all these issues throughout the entirety of the case, Lepro's technical expert offered testimony on only three defenses: non-infringement for the '320 and '604 Patents, and invalidity of the '604 Patent. Lepro failed to adduce any evidence in support of non-infringement of the '336 Patent, and invalidity of the '577, '399, and '138 Patents, which reveals these purported defenses for what they were: sham defenses propped up by substantively weak positions. This alone is grounds for exceptionality.

But Lepro made matters worse by intentionally and unnecessarily prolonging these positions. It was not until February 7, 2026—two days before Lepro's expert would testify—that Lepro's counsel confirmed via email that Lepro would not offer testimony on the invalidity of the '577, '399, and '138 Patents. And Lepro's failure to offer any testimony on the '336 Patent came as a complete surprise. During closing arguments, counsel for Lepro intimated that these defenses were not raised at trial because of Lepro's belief that there were low damages at stake for the '577, '399, and '138 Patents.[15] Regardless of its reasons, if Lepro had no plans to mount a defense for these patents, it should have stipulated to infringement, validity, and the damages amount during discovery and long before trial.[16] Instead, by prolonging the appearance of a defense, Lepro forced Signify to expend considerable resources preparing expert reports and trial testimony rebutting Lepro's invalidity defenses as to the '577, '399, and '138 Patents, as well as presenting its damages case for these patents, too. Further, Signify had already offered testimony of Dr. Pattison at trial

---

[14] *See* ECF Nos. 152 and 175.

[15] ECF No. 276 (Trial Tr., Feb. 10, 2026) at 83:6-16.

[16] *See Amazon.com, Inc. v. PersonalWeb Techs. LLC (In re PersonalWeb Techs. LLC)*, 85 F.4th 1148, 1160 (Fed. Cir. 2023) (affirming district court's award of fees where party "unnecessarily prolonged the action" by refusing to stipulate to non-infringement despite adverse claim construction.), *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.,* No. 20-cv-05501-EJD, 2024 U.S. Dist. LEXIS 48624, at *26 (N.D. Cal. Mar. 19, 2024) (party refusing to drop baseless claims and unnecessarily prolonging litigation provided basis for fee award).

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

on the '336 Patent, before finding out that Lepro had no intention of offering its own expert testimony on rebuttal. This unreasonably late withdrawal of non-infringement and invalidity defenses unnecessarily prolonged litigation by forcing Signify to expend its own resources to continue to prepare for trial.

Lepro also maintained an implausible defense to the '320 Patent, arguing that the outer enclosure of the accused bulbs was not a heat sink. This Court held in its Claim Construction Order that a "heat sink comprising a metal…forming a portion of the outer enclosure," did not require that the metal be exposed to the outside—the construction originally suggested by Lepro.[17] Despite Lepro's expert Dr. Curran admitting during deposition that his non-infringement opinion was based on the same theory that this Court rejected at claim construction,[18] Defendants stated that Dr. Curran's testimony to be offered at trial was that the bulbs have a "plastic outer enclosure that does not function as a heat sink—and is in fact a thermal insulator that restricts heat from flowing through it to the outside."[19] This position—an apparent attempt to find a workaround to the Court's claim construction order—was baseless. On cross-examination, Dr. Curran admitted:

(1) that the Lepro accused products have a "heat sink covered in plastic"[20]

(2) that the plastic outer surface of the products gets hot and dissipates heat from the LEDs,[21] and

(3) that he had posted on Facebook that the plastic outers of similar bulbs "acts as the heat sink,"[22] directly contradicting Lepro's position that the "plastic outer enclosure…does not function as a heat sink." These admissions demonstrate that Lepro persisted with a weak, "clearly untenable," defense—a defense that Lepro's own expert admitted did not hold water. Rather than persisting with this defense, Lepro should have stipulated to the infringement of the '320 Patent

[17] ECF No. 91 at 57.

[18] ECF No. 184, Ex. 2, Curran 10/16/2024 Transcript at p. 335:22-336:1

[19] ECF No. 187 at 5:13-16.

[20] ECF No. 275 (Trial Tr., Feb. 9, 2026) at 44:12-14

[21] *Id.* at 51:6-9.

[22] *Id.* at 65:13-66:9.

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

following the claim construction order.[23] As it was, Lepro unnecessarily prolonged litigation with a substantively weak position.

Lepro's dropped invalidity and non-infringement defenses, and its weak non-infringement defenses of the '320 Patent, account for nearly its entire defense at trial to Signify's claims of infringement. This conduct is grounds for exceptionality under 35 U.S.C. § 285 and justifies an award of attorneys' fees.

### C.   Lepro's unreasonably late patent exhaustion and *Daubert* motions

Beyond the substance (or lack thereof) of Lepro's defenses before and during trial, Lepro also attempted to raise a late patent exhaustion defense and *Daubert* motion to preclude testimony of Signify's damages expert. These objectively unreasonable tactics risked significant prejudice to Signify's case at trial, and should have been raised months, if not years, earlier.

Signify became aware, in the week before trial, that Lepro was likely to raise an unpled patent exhaustion defense at trial to argue that certain sales were "authorized" and thus not subject to damages. While Signify did not dispute that authorized sales should be excluded, Signify *did* dispute that Lepro had produced the evidence necessary to substantiate a claim that any sales were indeed authorized, and that Lepro had adequately pled such a defense. More to the point, Lepro had not properly pled patent exhaustion in its Answer or at any time in the three years thereafter, and thus had not provided any evidence corroborating its claims that certain sales were authorized, as it would have been required to provide had its defense been properly pled. Instead, Lepro had provided only a single spreadsheet in which certain sales were marked out having been sold by

---

[23] *See In re PersonalWeb*, 85 F.4th at 116 (affirming district court's award of fees where party "unnecessarily prolonged the action" by refusing to stipulate to non-infringement despite adverse claim construction.), *see also Location Based Servs*., 2018 U.S. Dist. LEXIS 232062 at *2-3 ("As to the substantive strength (or weakness) of a party's litigation position, courts in this district tend to award fees when a [party] persists with a clearly untenable claim, or adduces no evidence in support of its position."), *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-cv-00159 CW, 2014 U.S. Dist. LEXIS 129717, 2014 WL 4616847, at *18 (N.D. Cal. Sept. 15, 2014) (party held "groundless claims over Defendants' heads to increase potential settlement amounts" and "knew or should have known that its . . . claims were meritless" based on "several…decisions rejecting its litigation arguments").

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

"KLite," and no other supporting evidence. Signify had had no opportunity to examine whether the goods identified as having been sold by "KLite" actually were, as there were no contracts demonstrating that KLite was the source, or that any goods purchased from KLite were in fact provided to the defendant companies for sale. Additionally, Signify had no opportunity to depose any fact witness that would be used to authenticate such evidence, had it been supplied.

Given the prejudice to Signify's case, Signify filed a motion to preclude this defense at trial.[24] Lepro responded with a document production on January 29, 2026—two business days before trial was set to begin—with, ostensibly, the documents that it needed to support its unpled defense.[25] It is impossible to say precisely whether such documents would have supported such as a defense, as they were produced in Chinese, without any translation.[26] Lepro also filed a response motion, late in the afternoon the Friday before trial was set to begin, arguing that it should still be able to raise its unpled defense at trial, including a request for a short continuance to cure any evidentiary prejudice.[27]

This Court denied the motion as having been waived, noting that substantial judicial resources had been expended preparing for trial and that further resources would be expended with a continuance to avoid the prejudice of allowing an eleventh-hour defense.[28]

The patent exhaustion defense was not the only late motion filed by Lepro. Lepro raised the possibility of a *Daubert* motion against Signify's damages expert for the first time in its trial brief,[29] months after the close of expert discovery, and to the complete surprise of Signify. Signify raised the impropriety of this motion to the Court during the January 12, 2026 calendar call.[30] When asked why this motion was not raised sooner at the motion in limine deadline, counsel for

---

[24] ECF No. 235.

[25] *See* ECF No. 237.

[26] *See* ECF No. 238 at 3:14-19.

[27] *See* ECF No. 235.

[28] *See* ECF No. 238 at 3-4.

[29] ECF No. 212 at 24:11-16.

[30] ECF No. 220 (Calendar Call Tr., January 12, 2026) at 16:3-17:5.

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

Lepro responded: "I believe we had not reached a firm conclusion at that point, Your Honor."[31] While this Court preserved the ability of Lepro to object to Mr. Schoettelkotte's qualifications at the appropriate time, Lepro filed a motion requesting a *voir dire* hearing to determine the admissibility of Mr. Schoettelkotte's testimony.[32] Though couched as a *voir dire* hearing, this motion was a barely disguised *Daubert* motion, designed to preclude any testimony of Mr. Schoettelkotte and submitted by Lepro *months* after the close the expert discovery and the deadline for motions in limine.[33] In its motion, Lepro argued that Mr. Schoettelkotte's testimony should be precluded as relying on non-comparable EnabLED licenses[34]—a gross mischaracterization of Mr. Schoettelkotte's opinion. More accurately, Lepro's argument was based on the legal innovation that reviewing a license to determine whether it is comparable is itself an act of relying on a license.[35]

Lepro's *Daubert* motion was unsuccessful. This Court rightly concluded that Mr. Schoettelkotte did not in any way rely on the EnabLED licenses when forming his opinions on the hypothetical negotiation.[36] But the failure of Lepro's *Daubert* motion did not stop their own expert, Mr. Duski, from relying on the EnabLED program as comparable licenses in his testimony[37] or stop Lepro's counsel from cross-examining Mr. Schoettelkotte on his failure to rely on the EnabLED program.[38] Apparently, Lepro believes that the EnabLED program licenses are only not comparable when arguing a *Daubert* motion to the Court. Once outside the confines of

[31] *Id.* at 24:25-25:2.

[32] ECF No. 247.

[33] ECF No. 261 (Trial Tr., February 4, 2026) at 122:10-123:2. Counsel for Lepro suggested that the reason a Daubert motion was not raised sooner was due to the small amount of damages at stake: "we did not prepare *Daubert* motions in the context of a case where there were very -- there's very little at stake." *Id.*

[34] ECF No. 247 at 4:1-12.

[35] *Id.* at 126:7-15.

[36] ECF No. 262 (Trial Tr., February 5, 2026) at 7:1-7.

[37] ECF No. 275 (Trial Tr., February 9, 2026) at 147:4-10.

[38] ECF No. 265 (Trial Tr., February 6, 2026) at 8:7-12:14.

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

the *Daubert* motion, Lepro thinks that the EnabLED licenses are comparable and their rates should form a ceiling of any rates applying to the Patents-in-Suit. This flip-flopping classification of the EnabLED license as comparable or non-comparable to suit Lepro's purposes is nothing more than gamesmanship and represents objectively unreasonable trial tactics designed to disqualify Signify's expert at trial.

### D.    Lepro's substantively weak case and unreasonable conduct before trial

Lepro's refusal to withdraw baseless defenses did not begin at trial: it is a pattern that can be traced all the way back to Lepro's invalidity contentions. Lepro's only references cited in its contentions against the '336 Patent and the '320 Patent did not qualify as prior art under 35 § U.S.C. 102(e) as Lepro originally claimed.[39] During separate meet and confers, counsel for Lepro acknowledged that the references it relied upon were not prior art *but still refused to stipulate to their dismissal*.[40] Without a stipulation, Signify was required to file motions for summary judgment to have these defenses dismissed.[41]

Lepro's invalidity contentions likewise contained no mention of defenses under 35 U.S.C. § 112. When Signify moved for summary judgment of Lepro's 35 U.S.C. § 112 defenses, Lepro argued that it should still be permitted to maintain a 35 U.S.C. § 112 argument for the '336 and '320 Patents, based solely on the ability to cross examine Signify's experts.[42] This marked an early attempt to maintain a defense that was not properly preserved, a tactic that would raise its head again at trial in the form of Lepro's unpled patent exhaustion defenses and late *Daubert* challenges to Signify's damages expert.

---

[39] *See* ECF No. 152 (Order granting judgment on affirmative defense to '336 as a matter of law).

[40] *See* ECF No. 141 Ex. 1 (Declaration of Jeremy P. Oczek) ¶¶ 4-13, ECF No. 141 Ex. 4 email correspondence between Jeremy Oczek and Nicholas Brown; *see also* ECF No. 166 ("…Lepro does not dispute that it cannot bear its burden of proving that Recker is prior art to the '320 Patent.")

[41] *See* ECF Nos. 141 and 159

[42] *See* ECF No. 166 at 10-12.

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

But Lepro's weak defenses did not stop at invalidity defenses based on non-prior-art references or unpled 35 U.S.C. § 112 challenges: Lepro also submitted a rebuttal expert report that included no non-infringement positions for the '399, '138, and '577 Patents.[43] When Signify moved for summary judgment on these defenses, Lepro argued it should be permitted to maintain its non-infringement defenses of the '577 Patent based solely on attorney argument, effectively arguing it should be able to continue to trial without adducing any evidence of its own.[44]

This Court appropriately dismissed all Lepro defenses that lacked evidentiary support or properly preserved in its invalidity contentions.[45] But even so, Lepro's tactics forced motion practice that Signify should never have been required to undertake—consuming the time and resources of Signify as well as this Court. This unreasonable behavior fits a broader pattern of maintaining arguments that have no evidentiary support or are not properly preserved—a pattern that continued to trial.

Additionally, at trial it was revealed that Lepro's productions of sales information, relevant for the calculation of damages, had excluded sales through notable U.S. retailers, such as Walmart and Target.[46] While Lepro attempted to brushed this off as a harmless mistake, the record demonstrates that Lepro had hid the existence of these sales and stated in a declaration filed with the Court that the relevant Defendant company sold only through the Lepro website.[47]

And further, Lepro's strategy at the claim construction stage marks an early window into a pattern of raising substantively weak positions. Lepro raised twelve terms for construction, with the Court adopting only a portion of a single construction, completely rejecting the other eleven.

---

[43] *See* ECF No. 159 Ex. 8, Curran 10/16/2024 Transcript at pg. 400, line 20 to pg. 407, line 15.

[44] *See* ECF No. 166 at 4-17; *see also* ECF No. 175 (Order re Summary Judgment) ("Rather than countering with its own evidence, Lepro entirely relies on attorney argument.")

[45] *See* ECF No. 152, ECF No. 175 at 21.

[46] ECF No. 275 (Trial Tr., Feb. 9, 2026) at 10:15-17.

[47] ECF No. 101-2 (Declaration of Jiangyu Zhou) ¶ 4 ("Defendant LEPRO Innovation Inc. currently sells products through www.lepro.com website using the "Lepro" brand. LEPRO Innovation Inc. has occasionally sold products through www.lepro.com using the "LE"/"Lighting Ever" brands.")

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

The rejected constructions read limitations from the specification into the claims[48]—ignoring established Federal Circuit precedent, attempted to impose negative limitations into claim terms,[49] or imposed means-plus-function limitations[50] or limiting preambles[51] where the terms of the claims provided no basis for such limitations. This Court refused to adopt such strained positions. But Lepro's habit of raising substantively weak arguments would continue from claim construction to summary judgment and to trial.

In sum, Lepro's WeChat messages expose a party indifferent to its infringement of Signify's patent yet unwilling to drop defenses that had objectively weak, or no, evidentiary basis. Realizing its weak positions, Lepro's counsel attempted to resuscitate defenses at trial that should have been preserved in its pleadings, contentions, or earlier motions. This conduct during litigation and at trial required substantial expense of Signify's and this Court's resources. Signify is thus entitled to recover its attorney fees under 35 U.S.C. § 285.

### E.    Required information under LR 54-14

"Reasonable attorney's fees are based on the 'lodestar' calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)." *Alternative Petroleum Techs. Holdings Corp. v. Grimes*, No. 3:20-cv-00040-MMD-CLB, 2022 U.S. Dist. LEXIS 157738, at *19 (D. Nev. July 25, 2022). To perform that calculation, the "Court must first determine a reasonable fee by multiplying 'the number of hours reasonably expended on the litigation' by a 'reasonable hourly rate.'" *Id.*, *quoting Hensley*, 461 U.S. at 433. "Next, the Court decides whether to adjust the lodestar calculation based

---

[48] ECF No. 91 (Claim Construction Order) at 44, 51 ("The principal problem with Lepro's approach here is that it is trying to 'import limitations from the specification into the claims,' which is something that courts should generally avoid doing.")

[49] *Id.* at 42-43 ("I reject Lepro's request that I read between the lines of the specification to create a negative limitation that has no direct intrinsic support, and that I do so based solely upon Lepro's own ambiguous statements on natural physical phenomena and contentions about what a POSITA would understand these terms to mean."

[50] *Id.* at 13-23 ("As with 'controller' and 'adjustment circuit,' Lepro failed meet its burden and rebut the presumption that § 112(f) doesn't apply. So I find that 'power circuitry' is not a means-plus function term, and I afford it the plain and ordinary meaning.")

[51] *Id.* at 29 ("So while Lepro highlights a number of exceptions to the general rule that a preamble is not limiting, none of them applies here.")

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation." *Id.* Local Rule 54-14 sets out the *Kerr* factors for the Court to consider in deciding a fee motion. "Finally, only in 'rare and exceptional cases' should a court adjust the lodestar figure." *Id*. at 20.

Signify is seeking a total of $4,326,019.88 for attorney fees, (<u>Oczek Decl. ¶ 18; Swain Decl. ¶ 18; Austin Decl. ¶ 14</u>). Set forth below is the required information under LR 54-14:

**<u>LR 54-14(b)(1)</u>**: Signify's reasonable attorney's fees for work performed includes *at least* attorney's fees in connection with:

- preparation and service of detailed ninety-five-page Complaint (ECF No. 1), including investigating factual bases for complaint and teardown of dozens of Lepro's infringing products.

- preparation of Motion for Default Judgment (ECF No. 21) and supporting papers.

- preparation of Infringement Contentions pursuant to LPR 1-6 and responses to Invalidity Contentions pursuant to LPR 1-10.

- preparation of Motion to Strike Lepro's uncharted references from Invalidity Contentions (ECF No. 43) and preparation of Reply to Motion to Strike uncharted references (ECF No. 47).

- preparation of Opening Claim Construction Brief (ECF No. 54) and preparation of Reply Claim Construction Brief (ECF No. 64); attendance of associated Markman tutorial and hearing (Oct. 16-17, 2023).

- preparation of Motion to Compel Depositions in Las Vegas (ECF No. 69) of Lepro's fact witnesses based in China.

- preparation of Motion to Strike Amended Contentions (ECF No. 83), arguing that Lepro's amended Invalidity contentions did not comport with Court's Order striking Invalidity Contentions (ECF No. 70), and Reply to Motion to Strike Amended Contentions (ECF No. 89).

13

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

- preparation of Motion to Compel Full Depositions (ECF No. 93) of Lepro's fact and 30(b)(6) witnesses and supporting papers and attendance of hearing on motion (ECF No. 106).

- preparation for and deposition of Lepro's fact and 30(b)(6) witnesses, Ji Wu, Litao Xu, and Weiqiao Xun (11 days of depositions of three different corporate witnesses, conducted in January 2024), deposition of Zhikang Huang, Lepro's financial 30(b)(6) witness from (conducted over two days in April 2024), preparation for and deposition of Lepro's fact witness, Tianying Li (conducted over two days in May 2024).

- attendance of settlement conference on January 23, 2024.

- preparation of Amended Infringement Contentions following Claim Construction Order and motion requesting leave to serve the same (ECF No. 124).

- preparation of five expert technical reports detailing infringement of six patents pursuant to LR 26-1; and preparation of rebuttal reports to Dr. Curran's expert report.

- preparation of report detailing damages owed by Lepro for infringement of six Signify patents pursuant to LR 26-1.

- preparation of Motion to Compel Full and Fair Examination of Defendants Technical Expert (ECF No. 135) and Reply to Defendants' Response (ECF No. 149).

- preparation for and defense of depositions of Signify's technical and damages experts—Dr. Ricketts ('320 Patent), Dr. Krames ('604 Patent), Dr. Pattison ('336 Patent), Dr. Zane ('138 and '399 Patents), Dr. Wood ('577 Patent), and Mr. Schoettelkotte (damages)—in September-October 2024.

- preparation for and deposition of Lepro's technical expert, Dr. Curran, over three days in October 2024, and preparation for and deposition of Lepro's damages expert, Mr. Duski in September 2024.

- preparation of Motion for Partial Summary Judgment on Invalidity Defense for '336 Patent (ECF No. 141), Motion for Summary Judgment on Infringement and Invalidity

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

Defenses (ECF No. 159), Response to Defendants' Motion for Summary Judgment (ECF No. 169), Reply to Defendants' Response (ECF No. 167), e.g. relating to:

- o invalidity of the '336 Patent (unopposed)
- o infringement of the '399 and '138 Patents (unopposed)
- o invalidity of the '320 Patent (unopposed)
- o anticipation of the '399 and '138 Patents (unopposed)
- o infringement of the '577 Patent
- o no 35 U.S.C. § 112 invalidity of the '336, '399, '604, '138, '577 Patents
- o no anticipation and obviousness of '399 and '138 Patents

- preparation of Joint Pretrial Order (ECF No. 177), including preparation of trial exhibit list and deposition designations.

- attendance of settlement conference on September 29, 2025.

- preparation of Motions in Limine (ECF No. 184) and Opposition to Defendants' Motions in Limine (ECF No. 186).

- preparation of Plaintiffs' Trial Brief (ECF No. 200) and Proposed Voir Dire (ECF No. 198).

- preparation of Trial Exhibit List (ECF No. 202), Proposed Jury Instructions (ECF No. 207), and Proposed Verdict Form (ECF No. 210).

- attendance of Calendar Call on January 12, 2026 (ECF No. 252).

- trial preparation and attendance of seven-day Jury Trial, including trial motion practice (ECF Nos. 232-281), e.g.:

- o preparation of Motion to Exclude regarding patent exhaustion and implied license (ECF No. 232), and Response regarding same (ECF No. 237).
- o preparation of Response (ECF No. 254) to Lepro's disguised *Daubert* Brief (ECF No. 247) regarding voir dire hearing

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

o trial preparation (including preparation relating Lepro's dropped defenses related to non-infringement of the '336 Patent and invalidity of the '577, '399, and '138 Patents) and attendance of trial.

(Oczek Decl. ¶ 5; Swain Decl. ¶ 5; Austin Decl. ¶ 5.)

**LR 54-14(b)(2)**: Signify is concurrently filing a Bill of Costs pursuant to LR 54-1. (Oczek Decl. ¶ 6; Swain Decl. ¶ 6; Austin Decl. ¶ 6.)

**LR 54-14(b)(3)(A)**: On February 11, 2026, this Court entered the jury's verdict finding that Lepro's accused products infringed the '320 Patent (claim 1), the '604 Patent (claims 1 and 12), and the '336 Patent (claims 132 and 137), that the infringement of all the Patents-in-Suit was willful, and that Signify was owed $410,544 in damages for the infringement of all the patents-in-suit. In addition, the jury found that claims 1 and 12 of the '604 Patent were valid. Prior to the jury's findings, this Court had ruled that, as a matter of law, the '399, '138, and '577 Patents were infringed, that Lepro's affirmative defenses under 35 U.S.C. § 112 were dismissed, that Lepro's prior art invalidity defense as to the '336 and '320 patents were dismissed, and that Defendants anticipation defenses to the '138 and '399 Patents were likewise dismissed.[52] (Oczek Decl. ¶ 7; Swain Decl. ¶ 7.)

**LR 54-14(b)(3)(B)**: Patent cases in the District of Nevada are governed by the local patent rules, LPR 1-1 through 1-23. These local patent rules set out standard additional practices necessary for bringing a patent case to trial, including, among other things, disclosure of infringement contentions, certain document production associated with infringement contentions, responses to invalidity contentions, exchange of proposed terms for construction and claim construction briefing and hearing, and expert designations and rebuttal expert designations, as well as multiple court-ordered settlement conferences. The work performed by Signify's attorneys to meet these requirements, and other general requirements of patent litigation, is detailed in response to LR 54-14(b)(1). To bring this case to trial, Signify is seeking fees 6,836.75 hours of attorney and professional time for Bond, Schoeneck & King (Oczek Decl. ¶ 8), 1540.7 hours of attorney

---

[52] *See* ECF Nos. 152 and 175.

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

and professional time for Alston & Bird (Swain Decl. ¶ 8), and approximately 469 hours of attorney and professional time for Nevada local counsel (Austin Decl. ¶ 6).

**LR 54-14(b)(3)(C)**: Patent litigation is generally complex, technical, and laborious. This case, in particular, involved six different patents covering LED lighting technology, including aspects of electronic circuits, spectral measurements, antenna placement, and luminaire design. As described above, the complexity and length of this case was in part due to Lepro's unwillingness to stipulate to drop defenses that it would ultimately drop at trial, and the insistence on raising meritless non-infringement positions. (Oczek Decl. ¶ 9; Swain Decl. ¶ 9; Austin Decl. ¶ 7.)

**LR 54-14(b)(3)(D)**: Because of the inherent technical subject matter of patent litigation, Signify was required to retain attorneys with technical backgrounds and that have experience litigating patent cases. (Oczek Decl. ¶ 10; Swain Decl. ¶ 10; Austin Decl. ¶ 7.)

**LR 54-14(b)(3)(E)**: Signify's attorneys were not precluded from other employment due to acceptance of this case. (Oczek Decl. ¶ 11; Swain Decl. ¶ 11; Austin Decl. ¶ 8.)

**LR 54-14(b)(3)(F)**: Signify's attorney fee amount is customary and is in line with rates approved for attorneys in this jurisdiction and in the Ninth Circuit.[53] (Oczek Decl. ¶ 12; Swain Decl. ¶ 12; Austin Decl. ¶ 9.)

**LR 54-14(b)(3)(G)**: Signify's attorney fee amount is not fixed or contingent. (Oczek Decl. ¶ 13; Swain Decl. ¶ 13; Austin Decl. ¶ 10.)

---

[53] Rates for counsel have seen large increases in recent years. Recent reporting demonstrates that senior partners at top law firms are now charging $3,400/hr. *See* https://www.abajournal.com/news/article/lawyers-fees-skyrocket-some-charging-up-to-3400-an-hour (last accessed Feb. 21, 2026). Courts in the 9th Cir. have found that rates around and over $1,000/hr are reasonable. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) (rates of $750 to $975/hr for partners, at an average of $786/hr, was appropriate in patent litigation), *Perfect 10 Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063, at *62 (C.D. Cal. Mar. 24, 2015) (approving rates of $825 to $930 for partners, $350 to $690 for associates, and $240 to $290 for staff in trademark infringement suit), *Andrews v. Equinox Holdings*, 570 F. Supp. 3d 803 (N.D. Cal. 2021) (hourly rates ranging from $240-1,250 found reasonable), *Mayorga v. Ronaldo*, 656 F. Supp. 3d 1218, 1232 (D. Nev. 2023) (hourly rates ranging from $350-850/hour found reasonable).

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

**LR 54-14(b)(3)(H)**: No time limitations were imposed by the client or circumstances. (Oczek Decl. ¶ 14; Swain Decl. ¶ 14; Austin Decl. ¶ 10.)

**LR 54-14(b)(3)(I)**: Signify's attorneys are experienced and reputable attorneys, specializing in patent litigation. Signify's attorneys possess decades of experience in patent ligation. (Oczek Decl. ¶ 15; Swain Decl. ¶ 15; Austin Decl. ¶ 11.)

**LR 54-14(b)(3)(J)**: This case was not undesirable. (Oczek Decl. ¶ 16; Swain Decl. ¶ 16; Austin Decl. ¶ 12.)

**LR 54-14(b)(3)(K)**: Bond, Schoeneck & King, Alston & Bird, and Signify's local counsel (Chris Austin of Lex Tecnica, formerly of Weide & Miler) have had longstanding professional relationships with Signify. (Oczek Decl. ¶ 17; Swain Decl. ¶ 17; Austin Decl. ¶ 13.)

**LR 54-14(b)(3)(L)**: Signify's requested attorney fees are reasonable and similar to fee awards in other patent cases in the Ninth Circuit.[54] (Oczek Decl. ¶ 18; Swain Decl. ¶ 18; Austin Decl. ¶ 14.)

### III.    CONCLUSION

Lepro's remorseless and callous disregard toward Signify's patent infringement claims, its late withdrawal of defenses at trial, and its insistence on persisting with untenable defenses render this case exceptional under 35 U.S.C. 285. Accordingly, Signify respectfully requests recovery of its reasonable attorney fees as set forth herein.

---

[54] *See Universal Elecs., Inc.,* 130 F. Supp. at 1335 (C.D. Cal. 2015) (award of $4.1M of attorney fees in patent case); *Tech. Props. v. Canon Inc.*, No. C 14-3640 CW, 2017 U.S. Dist. LEXIS 219618 (N.D. Cal. Apr. 12, 2017) (award of approximately $1.8M of attorney fees in patent case).

18

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**

Dated: February 25, 2026                    Respectfully submitted,

                                            /s/ Jeremy P. Oczek

                                            F. Christopher Austin (SBN 6559)
                                            LEX TECNICA, LTD.
                                            10161 Park Run Drive, Suite 150
                                            Las Vegas, Nevada 89145
                                            Phone: (725) 239-8413
                                            chris@lextecnica.com

                                            Jeremy P. Oczek (*Pro hac vice*)
                                            BOND, SCHOENECK & KING, PLLC
                                            200 Delaware Avenue
                                            Buffalo, New York 14202
                                            Telephone: (716) 416-7000
                                            Email: jpoczek@bsk.com

                                            Jonathan L. Gray (*Pro hac vice*)
                                            BOND, SCHOENECK & KING, PLLC
                                            One Lincoln Center
                                            Syracuse, New York 13202
                                            Telephone: (315) 218-8500
                                            Email: jlgray@bsk.com

                                            Adam D. Swain *(Pro hac vice)*
                                            ALSTON & BIRD
                                            950 F Street, NW
                                            Washington, DC 20004
                                            Telephone: (202) 239-3622
                                            Email: Adam.Swain@alston.com

                                            J. Ravindra Fernando *(Pro hac vice)*
                                            ALSTON & BIRD
                                            1120 South Tryon Street, Suite 300
                                            Charlotte, NC 28203-6818
                                            Telephone: (704) 444-1136
                                            Email: Ravi.Fernando@alston.com

                                            Natalie C. Clayton (*Pro hac vice*)
                                            ALSTON & BIRD
                                            90 Park Avenue, 15th Floor
                                            New York, NY 10016-1387
                                            Telephone: (212) 210-9573
                                            Email: Natalie.Clayton@alston.com

                                            *COUNSEL FOR PLAINTIFFS*
                                            *Signify North America Corporation and*
                                            *Signify Holding B.V.*

19

**SIGNIFY'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C § 285**